

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CNR:LAB
F. #2022R00659

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 3, 2023

By ECF

The Honorable Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Christopher Moscinski
                Criminal Docket No. 22-485 (SLT)

Dear Judge Tiscione:

      The government respectfully submits this letter in opposition to the defendant Christopher Moscinski's motion for dismissal of the Information, see ECF No. 10, under Federal Rule of Criminal Procedure Rule 12(b)(2) or a judgment of acquittal under Federal Criminal Rule of Procedure 29(c)(1). See ECF No. 21 ("Motion"). For the foregoing reasons, the Court should deny the defendant's Motion in its entirety.

    I.    Background

      On October 24, 2022, the defendant was charged by Information with one-count of violating 18 U.S.C. § 248, the Freedom of Access To Clinic Entrances Act (the "FACE" Act). ECF No. 10. Section 248 reads in relevant part: "[w]hoever . . . by physical obstruction . . . intimidates or interferes with or attempts to . . . intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services . . . shall be [guilty of a crime]." 18 U.S.C. § 248. After a one day bench trial on January 23, 2023, the Court found that the defendant was guilty of violating the FACE Act.[1]

      Five witness provided testimony at trial. The evidence at trial showed that in the early morning of July 7, 2022, the defendant fastened locks and chains to the gate surrounding the entrance of Planned Parenthood located in Hempstead, New York — rendering the entrance impassable and preventing Planned Parenthood employees from opening the clinic when they arrived that morning. Tr. 34:14-18, 52:8-12. Police and fire department personnel responded to help remove the locks. Tr. 59:5-17, 61:19-62:19. In response, the defendant, wearing a priest's

---

[1] The transcript from the trial is attached hereto as Exhibit A and is referred to herein as "Tr."

robe, laid down in front of the gates, to create a physical obstruction so that cars could not enter the gates after the locks had been removed. Tr. 62:20-63:8. The defendant was subsequently arrested and carried away from the gates after he attempted to resist arrest by causing his body to go limp. Tr. 63:18-64:22. The evidence also showed that Planned Parenthood is a provider of a range of reproductive health services, including but not limited to abortion services. Tr. 51:2-8. It was not contested at trial that the defendant placed locks and chains on the Planned Parenthood gate and that the defendant physically laid down in front of the gate after the locks and chains were removed creating a physical obstruction to the parking lot entrance surrounding the Planned Parenthood building. See Tr. 89:20-5. In fact, the defendant admitted to his conduct in a recorded interview that was received by the Court as evidence. See Government Exhibit 195.

At the conclusion of the evidence, defense counsel orally made what he characterized as a "hybrid Rule 29 jurisdictional motion" under Federal Criminal Rule of Procedure Rule 12(b)(2) and stated that he anticipated filing post-trial briefing expanding his oral motion with two additional issues relating to viewpoint and content discrimination. See Tr. 70:7-18, 77:21-78:1-5. The government orally opposed the motion and the Court denied it. See Tr. 78-79:1-15.

The Court ruled from the bench and found the defendant guilty of violating the FACE Act, stating that the government had established the elements of the FACE Act beyond a reasonable doubt. See Tr. 89:20-93:6, 93:7-13 ("[T]he evidence proves beyond a reasonable doubt that … the defendant clearly intended to, and did, interfere with the operation of a facility that was engaged in a provision of reproductive health services.")

The defendant filed a post-trial brief on February 7, 2023, raising the issues previously previewed for the court. See Motion.

II. Argument

A. The Use of the FACE Act to Prosecute the Defendant Was Lawful

The defendant moves to dismiss the Information pursuant to Rule 12(b)(2) on the basis that the Court lacks jurisdiction over the defendant because the FACE Act was an unlawful exercise of Congress' power and because it lacks a jurisdictional element. Motion at 6-10. The controlling precedent in the Second Circuit is that the FACE Act is a valid exercise of Congress's power under the Commerce Clause. See United States v. Weslin, 156 F.3d 292, 296 (2d Cir. 1998). As discussed herein, there is no binding precedent to the contrary, cited by the defendant or otherwise, which supports the contention that the FACE Act exceeds Congress' authority. Rather, every court that has examined the constitutionality of the FACE Act has found it to be valid and all have cited the Commerce Clause as the source of its validity. See Weslin, 156 F.3d at 295 (collecting cases). Accordingly, the Court should deny the defendant's Rule 12(b)(2) motion.

2

1. The FACE Act Does Not Exceed Congress' Powers Under the Commerce Clause

In Weslin, the Second Circuit stated that Congress "can use its commerce power to regulate three categories of activity": "(1) the channels of interstate commerce; (2) the 'instrumentalities' of interstate commerce, or persons or things in interstate commerce; [and] (3) activities having a 'substantial relation' to, or which 'substantially affect,' interstate commerce." Id. at 296. When Congress "enacts a statute on the theory that the activity regulated substantially affects interstate commerce, the scope of judicial review is limited to the question of whether Congress had a rational basis for reaching that conclusion." Id. As applied to the FACE Act, the court in Weslin found that Congress properly determined that the FACE Act regulates activity which has a substantial relation or substantially effects interstate commerce because both doctors and women travel interstate to respectively provide and receive reproductive health services and clinics purchase medical supplies in interstate commerce. Id. Nothing has disturbed the holding in Weslin. It remains good law and is binding in the Second Circuit. The defendant cites no prevailing authority in the Second Circuit, or other circuits, to the contrary. This is because the constitutionality of the FACE Act is well-settled law. See Weslin, 156 F.3d at 296; see also Norton v. Ashcroft, 298 F.3d 547 (6th Cir. 2002); United States v. Wilson, 154 F.3d 658 (7th Cir.1998); United States v. Bird, 124 F.3d 667 (5th Cir.1997), cert. denied, 523 U.S. 1006 (1998); Am. Life League, Inc. v. Reno, 47 F.3d 642 (4th Cir. 1995); Hoffman v. Hunt, 126 F.3d 575 (4th Cir.1997), cert. denied, 523 U.S. 1136 (1998); Terry v. Reno, 101 F.3d 1412 (D.C.Cir.1996), cert. denied, 520 U.S. 1264 (1996); United States v. Soderna, 82 F.3d 1370 (7th Cir.1996), cert. denied, 519 U.S. 1006 (1996); United States v. Dinwiddie, 76 F.3d 913 (8th Cir.1996), cert. denied, 519 U.S. 1043 (1996); Cheffer v. Reno, 55 F.3d 1517 (11th Cir.1995). Moreover, when the Fifth Circuit was asked to review a finding by the district court that the FACE Act was unconstitutional, it upheld that it was indeed constitutional. See United States v. Bird, 401 F.3d 633, 634 (5th Cir. 2005) (rejecting the notion that the Supreme Court's decision in United States v. Morrison, 529 U.S. 598 (2000) changed the court's decision that the FACE Act is a valid exercise of the Commerce Clause.).

The holding in Weslin is also in line with Supreme Court precedent which recognizes Congress' Commerce Clause power to regulate activities that "arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[] interstate commerce." United States v. Lopez, 514 U.S. 549, 561 (1995). The Supreme Court has also held that Congress may regulate conduct without a jurisdictional element, where it has rationally concluded that the class of activities at issue substantially affects interstate commerce. Perez v. United States, 402 U.S. 146, 154 (1971); United States v. Soderna, 82 F.3d 1370, 1373 (7th Cir. 1996); (citing Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 332 (1991)) ("[T]he test [is] not the effect of the particular conduct alleged, but that effect cumulated over all the conduct subject to the statute.").

Notably, Weslin addresses Lopez, cited by the defendant in support of his argument that the FACE Act was an invalid exercise of Congress' authority. Motion at 8-10. In Lopez, the Supreme Court invalidated the federal Gun Free School Zone Act on the basis that gun possession did not implicate interstate commerce. Lopez, 514 U.S. at 549. In Weslin, the court found that unlike in Lopez where "the Supreme Court noted the absence of specific

3

congressional findings that the Gun Free School Zones Act regulated activities substantially affecting interstate commerce[,]" "Congress specifically found that the activities governed by [the FACE Act] affect interstate commerce." Id. at 296.  Therefore, Lopez is inapposite and the defendant's claim to the contrary should be disregarded by the Court.

> 1. The FACE Act Does Not Need a Jurisdictional Element Because It Was a Valid Exercise of Congress' Power

In the Second Circuit, the FACE Act does not need to have a jurisdictional element, as the defendant alleges, Motion at 7-8, because the validity of the statute comes from Congress' power alone to regulate activity substantially affecting interstate commerce.  See Weslin, 156 F.3d at 296 (noting that Congress can use its power under the Commerce Clause to regulate activity, including activity related to FACE Act violations); see also United States v. Hill, 893 F. Supp. 1034, 1037-38 (N.D. Fla. 1994) ("Whether Hill's acts or the activities of the clinic had an effect on interstate commerce is irrelevant, since the Act itself is properly based on the Commerce Clause.") (internal citations omitted)).  Thus, the defendant's challenge to the statute on this theory also fails.

> B. The FACE Act Is Not Premised on Enforcing the Right to Abortion and Is Valid Law

The defendant also seeks to undermine the validity of the FACE Act by suggesting that the government may argue that the FACE Act is a valid exercise of Congress' power to protect the right to abortion which is no longer a protected right.  Motion at 15.  The government has not made this argument and is not now asserting it in response to the defendant's Motion.

The FACE Act is not limited by statute, case law, or otherwise to abortion care.  It prohibits conduct that targets the provision of reproductive health services, which the statute defines as services to "include[] medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5).  Historically, courts have not held that the FACE Act was predicated upon or enacted to enforce or otherwise in furtherance of any Constitutional right to or protection for abortion care.  Rather, § 248 has been upheld as an appropriate exercise of Congress's power to legislate under the Commerce Clause, which provides Congress with the authority to regulate individual behavior that affects interstate or foreign commerce.  As discussed above, every court to have examined § 248's constitutionality has found it to be valid, and all have cited the Commerce Clause as the source of its validity, and not the right to abortion previously recognized by Roe v. Wade, 410 U.S. 113 (1973).  See Weslin, 156 F.3d at 295 (collecting cases).  Thus, as noted herein, the lawfulness of the FACE Act and the application to the defendant was proper and the defendant has no basis to seek post-trial relief under this theory.

### C. The Government Has Not Engaged in Viewpoint Discrimination and the Defendant's Claim Should Be Dismissed as Untimely

Rule 29 motions test the sufficiency of the evidence adduced at trial. Viewpoint discrimination is not an element of the sole FACE Act count of the Information. The defendant's claim is untimely and has not been properly brought under Rule 29. Notwithstanding this procedural error, the defendant's claim has no merit because the FACE Act is both viewpoint and content neutral. The statute was also appropriately applied to the defendant for committing the crime of obstructing access to Planned Parenthood on July 7, 2022 — which the government proved beyond a reasonable doubt at trial. The defendant's speech has not been targeted or implicated at all: he is charged with violating the FACE Act because of his conduct, namely, for using a physical obstruction that interfered with access to reproductive health care. For these reasons, the defendant's claim should be disregarded summarily by the Court.

#### 1. The Defendant's Viewpoint Discrimination Claim Is Untimely

The defendant's attempt to raise viewpoint discrimination under the First Amendment post-trial is not timely or appropriate under Rule 29. Rule 29 motions are brought when a party is seeking a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. Under that standard, a conviction must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (citations omitted) (emphasis in original). In evaluating the sufficiency of the evidence, a court "must view the evidence in the light most favorable to the government." United States v. Atilla, 966 F.3d 118, 128 (2d Cir. 2020).

Here, the defendant was charged with violating the FACE Act and the Court found that the government met its burden at trial as to the elements of the FACE Act. See Tr. 89:20-93. The defendant raises no challenge as to the weight of the evidence. For this reason and under the Rule 29 standard, the defendant's viewpoint discrimination claim should have been raised pre-trial. Moreover, while the defendant argues that his viewpoint discrimination claim is distinct from one of selective prosecution, which must be raised before trial, see Fed. R. Crim. P. 12 (b)(3)(A)(iv), the defendant's arguments suggest an attempt to revive time-barred allegations under the guise of viewpoint discrimination. See Motion at 18-22 (arguing that the defendant and other pro-life advocates have been disproportionately prosecuted). The Court should disregard the defendant's arguments as untimely.

#### 2. The FACE Act Is Viewpoint and Content Neutral

The Second Circuit as well as other circuits have held that the FACE Act does not violate the First Amendment because it regulates conduct rather than speech and is viewpoint neutral. Weslin, 156 F.3d at 297; see also United States v. Gregg, 226 F.3d 253, 267 (3d Cir. 2000); Ashcroft, 298 F.3d at 552 (6th Cir. 2002); Wilson, 154 F.3d at 664; Bird, 124 F.3d at 683-84; Am. Life League, Inc., 47 F.3d at 648-52; Reno, 101 F.3d at 1418-1421; Soderna, 82 F.3d at 1376; Dinwiddie, 76 F.3d at 923; Cheffer, 55 F.3d at 1521-22. As captured in the plain text of the statute, the FACE Act prohibits the use of force, the threat of force, and physical obstruction.

5

It excludes peaceful expressive conduct, regardless of viewpoint, from its reach, such as peaceful and non-obstructive protests outside of reproductive health facilities. Such conduct is contrary to what the defendant did here. Here, the defendant deliberately placed locks and chains on the gate to the entrance of Planned Parenthood — and in the defendant's own words — did so with the aim of keeping it "closed for as long as possible." See Government Exhibit 195. For this reason, the defendant's conduct squarely falls under the lawful ambit of the FACE Act.

The defendant's claim that the FACE Act has been disproportionately used against the defendant and other pro-life advocates have been targeted for their viewpoint, is a claim that has been unsuccessful on numerous occasions and fails again here because the statute itself is viewpoint neutral. Numerous courts, none cited by the defendant, have found that even assuming "the majority of those whose conduct the statute punishes probably oppose abortion does not call the statute's neutrality into question." Terry, 101 F.3d at 1419; see also Wilson, 154 F.3d at 664; Dinwiddie, 76 F.3d at 923; Soderna, 82 F.3d at 1376; Weslin, 964 F. Supp. 83, 85 (W.D.N.Y. 1997), aff'd, 156 F.3d 292 (2d Cir. 1998).

The FACE Act is also content neutral. "[B]oth by its language and its application…[it] seeks to govern all people who obstruct the provision of reproductive health services…[a]nd it does so regardless of whether the obstruction is or is not motivated by opposition to abortion." Weslin, 156 F.3d at 296. The statute criminalizes the "obstruction of reproductive health clinics regardless of the issue that animates the demonstrators" and "[i]t contains no requirement whatsoever that the offenders intend to communicate a particular message—or any message at all—by their obstructive actions." Id.

Here, the FACE Act was applied here for the simple reason that it applies "whenever access to reproductive health services is obstructed" — and as the overwhelmingly evidence at trial showed — that is what the defendant did here. Id. Moreover, there is no evidence in the trial record that the defendant's speech was targeted or that basis for his prosecution was not viewpoint or content neutral. The defendant was charged and prosecuted because as he admitted, see Government Exhibit 159, he deliberately obstructed the entrance to Planned Parenthood, a clinic providing a variety of reproductive health services.

III. Conclusion

   For the foregoing reasons, the defendant's motion for dismissal of the Information under Rule 12(b)(2) or a judgment of acquittal under Rule 29(c)(1) should be denied in its entirety.

             Very truly yours,

             BREON PEACE
             United States Attorney

     By: Lauren A. Bowman
        Lauren A. Bowman
        Assistant U.S. Attorney
        (718) 254-6047